Weygandt, C. J.
The sole question involved in each case is the constitutionality of Section 3 of House Bill No. 1130 enacted by the 103rd General Assembly of Ohio, effective October 16, 1959.
This section reads:
“Section 3. Sections 4141.01 to 4141.46, inclusive, of the Revised Code, as amended by this act, shall apply to all applications for the determination of benefit rights filed on or after the effective date of this act.
“Any individual who has had his benefit rights determined prior to the effective date of this act and is in an unexpired benefit year on the effective date of this act shall, with respect to weeks of unemployment beginning on and after the effective date of this act and within such unexpired benefit year, have his eligibility to receive benefits for such weeks determined in accordance with the provisions of Sections 4141.01 to 4141.46, inclusive, of the Revised Code, as amended by this act, and shall be entitled for such weeks, upon application, to:
“(a) Have his weekly benefit amount recomputed under division (B) of Section 4141.30 of the Revised Code, as amended by this act, and any remuneration paid to him in the base period of his unexpired benefit year may be used in such recomputation, notwithstanding any previous exclusion of wages under division (E) of Section 4141.30 of the Revised Code as it existed prior to the effective date of this act;
“(b) Have his total benefits redetermined by multiplying his recomputed weekly benefit amount by the number of full *230 weeks of benefits, if any, still available to him on the effective date of this act.
‘ ‘ The Administrator of the Bureau of Unemployment Compensation shall notify the claimant and any potentially chargeable employer of such recomputation. Such employer’s account shall be charged according to the recomputed weekly benefit amount, but in no event shall the total charges to an employer’s account exceed the maximum permissible under division 4141.24 of the Revised Code, as it existed prior to the effective date of this act.”
In its journal entry the Court of Appeals for Lorain County held in part:
“It is therefore considered, ordered and adjudged by the court that the judgment of the Court of Common Pleas of Lorain County be and the same is hereby reversed and held for naught. And the court, proceeding now to render the judgment which the Court of Common Pleas of Lorain County ought to have rendered, hereby finds that Section 3 of House Bill No. 1130, being an act of the 103rd General Assembly to amend various sections of Chapter 4141 of the Revised Code, contravenes Section 28 of Article II of the Constitution of Ohio, and is invalid to the extent that it permits the redetermination of benefits after initial determination has been determined and which results in the employer being charged with the extra burden of increased compensation; that the same constitutes the imposition of a new duty or new obligation upon a past transaction, and hence, is a retroactive law.
“It is further considered, ordered and adjudged 'that the action of the Administrator of the Bureau of Unemployment Compensation in recomputing the weekly benefits and redetermining the total benefits payable to Clarenqe H. Imhof according to the benefits provided by Sections 4141.01 to 4141.46, inclusive, as amended by House Bill No. 1130, is unconstitutional and the same shall be set aside and held for naught; and weekly benefits and total benefits shall be allowed in accordance with the law in effect at the time the claimant’s application for determination of benefit rights was filed; and that any increased benefits which may have been paid to such claimant and charged to the appellant’s account shall be removed as a charge against such account.”
*231 The Court of Appeals for Mahoning County, on the contrary, held that the provisions of Section 3, supra, are not unconstitutional.
In itfe opinion the Court of Appeals for Lorain County reasoned in part as follows:
“The question raised by this appeal is, whether a person who has been declared eligible to receive, and has been receiving unemployment compensation, may have such compensation increased for the balance of the unexpired benefit year.
“In other words, does one receiving unemployment compensation have a fixed maximum right by the original determination of eligibility, or is this maximum right subject to change for future payments?
(( & * *
“In the instant case, the .weeks for which Mr. Imhof seeks additional compensation are in the future. There is no claim that he is entitled to any additional payment for weeks that have passed and for which he has received his unemployment compensation.
“The unemployment compensation fund is made up entirely of funds contributed by the employer. The employee does not, as under the Social Security System, contribute a share of the fund from which benefits are paid. Each employer has an account with the administrator of the law, into which account .funds are placed by the employer, and credit is given this employer for all payments made, plus interest received on his account.
“Each employer must pay into the fund, during each calendar year, 2.7 % of the wages paid by such employer to his employees. An employer who has built up his fund, by reason of steady employment or other contributions, to a point that exceeds 15% of his average annual payroll, is required to pay only one-tenth of 1% of his average annual payroll into the fund. For every percentage point below 15% of the average annual payroll, the rate of payment increases, to a point where the maximum payment of 2.7% of the average annual payroll is required.
“An employer with a good record for steady work and few, if any, fluctuations in the number of layoffs, soon builds up the funds created to his account to the maximum, and thus *232 enjoys the most favorable rate. Any charge against this fund may result in a change of merit status, and hence an additional rate may be imposed.
“We do not know what merit standing The General Industries Company enjoyed, but certainly any increase in payment . of unemployment benefits by a change in the law imposes an additional burden on the fund, and thus could affect the future merit rate that otherwise may not have been disturbed except for this increased payment.
“We believe that when Mr. Imhof, under the terms of the law before the amendment of October 16,1959, had his eligibility status determined, there was then a fixed sum chargeable against the unemployment compensation fund of his employer, The General Industries Company. He knew, and the company knew, what their rights were as to total amount payable. Whether Mr. Imhof ever received this sum depended on many factors bearing upon his continuing eligibility under the act.
“The General Industries Company then knew, or could compute, what their status with the unemployment compensation fund was, and whether it could be decreased any additional amount before they lost their then merit rating.
‘ ‘ The maximum difference between no rating, with a charge of 2.7% of total annual payroll, and a charge of one-tenth of 1% of total annual payroll, in most companies would be a tax that could mean the difference between a profitable and an unprofitable business. In this respect, the right to redetermine benefits after eligibility has been determined, and after the employee is no longer connected with the company being charged with the extra burden of increased compensation, is the imposition of a new duty or new obligation upon a past transaction, and hence, within the meaning of Section 28, Article II of the Ohio Constitution, a retroactive law.
“The relationship between a determination of eligibility status under the unemployment compensation law is analogous to the determination of status of a claimant under the workmen’s compensation law. Under this latter act, the Supreme Court of Ohio has said:
“ ‘2. The provisions of the General Code relating to compensation of injured employees or the dependents of killed employees in force at the time the cause of action accrues are *233 the measure of the right of such employees and dependents to participate in the State Insurance Fund.
“ ‘3. The cause of action of an injured employee accrues at the time he receives an injury in the course of his employment. Industrial Commission v. Kamrath, 118 Ohio St., 1.’
“We therefore determine that the judgment herein should be reversed, and final judgment rendered for the appellant, for the reason that Section 3 of House Bill 1130, as it applies to a redetermination of the unemployment benefits of Clarence H. Imhof, is unconstitutional.”
However, the views of the Mahoning County courts present an interesting contrast to those of the Court of Appeals for Lorain County.
In its opinion the Mahoning County Court of Common Pleas noted the contention of the employer that “by increasing the weekly benefit amount pursuant to Section 3 of House Bill 1130 after the effective date of the act, the employer’s total charge would exceed the limitation of 26 times the weekly benefit amount determined under prior law; and that therefore Section 3, as involved in this action, is unconstitutional, being retroactive.” Then follows this reasoning:
“It must be noted that the action of the Legislature was restricted to charges to the employer’s account which might arise and then only after the effective date of the act. In the determination of the weekly benefit amount or maximum benefits payable, the administrator determines the base period wages, looks to the corresponding category of weekly benefits and multiplies that by the maximum number of weeks, and it is purely an arithmetical determination. In this case when the' appellant received notice of the initial determination, the effect was to inform the employer that the appellee could receive $33 per week and if that figure be multiplied by 26, the result is $858. The charges to the appellant’s account are entirely contingent upon numerous contingencies until weekly benefit amounts are actually paid. And, whether or not any weekly benefit amounts will be paid depends upon a multitude of factors accruing within the benefit year: The employee might be called back to work, he may secure other employment, he may be disqualified from a weekly benefit by numerous factors set forth in the act. It cannot be said with any degree *234 of certainty that the employer’s contribution rate will be affected at all, for the employee, his benefit having been established, may never collect a dime in unemployment benefits. As to the employer’s rate of contribution: On July 1 of each year, the‘charges to the employer’s accounts since the previous July 1 are totalled and the employer’s contribution rate for the following calendar year beginning the next January 1 is established. At that time R. C. 4141.26 provides that the employer shall be notified of his contribution rate as soon as practicable after the first day of October but not later than the first day of January, of the ensuing calendar year. The employer then has 60 days to appeal and that section further provides:
“ ‘This section applies to all other determinations and orders of the administrator affecting the liability of an employer to pay contributions or respecting applications for refunds of contributions.’
“The act does not set up the employer’s taxes with reference to benefit years. The computation periods and calendar years cut across benefit years; part of the benefit year may be for the purposes of taxation included in one computation period and part in another. For the purpose of assessing the tax, it is the amount of benefits which have been paid that count. The benefit year is not intended to be a taxing device. If the legislation becomes retrospective as to any particular employee, the question should be raised when the facts show what the employer’s contribution rate has been in fact affected.
“What the Legislature had in mind in stating that the determination of the administrator or deputy is final upon the establishment of the benefit year is that the initial determination establishes the general eligibility of the employee. It is each weekly claim which establishes whether or not the unemployed person is paid benefits for that week, and consequently, whether or not any charge at all is to be made to the employer’s account.”
Then that court concluded:
“ * * * Far from making the initial determination final, the act gave the administrator power to re-examine even after the appeal time the initial determination upon many grounds set forth in various sections of the act,
*235 ( ( S' S' S'
“It appears without question that each week is a separate determination with respect to unemployment claimed by a claimant, and the determination by the administrator that there is a valid application for compensation is merely the initial step in a total proceeding and does not establish with finality whether or not the claimant will receive benefits, and, if so, the amount. ’ ’
The Court of Appeals for Mahoning County reached the same conclusion as follows:
“We must bear in mind that the action of the Legislature was restricted to charges to the employer’s account which might arise, and then only after the effective date of the act.
“In the instant case, when the appellant received notice of the initial determination, the effect was to inform the employer that Scott Weiser could receive $33 per week and, if that figure be multiplied by 26, the result would be $858. Whether or not any weekly benefit amounts will ever be paid depends upon a multitude of factors occuring within the benefit year.
“The original determination of the administrator is final upon the establishment of the benefit year, and that determines the general eligibility of the employee. It is each weekly claim which establishes whether the employed person is paid benefits for that week, and, thus, whether or not any charge at all is to be made to the employer’s account.
“Each week is a separate determination with respect to unemployment claimed by an unemployed person, and the determination by the administrator that there is a valid application for compensation is merely the initial step in a total proceeding and does not establish with finality whether or not the claimant will receive benefits and, if so, how much.
“The claimant does not have any fixed maximum right by the original determination of eligibility. Section 3, paragraph b, closes with these words:
“ ‘Such employer’s account shall be charged according to the recomputed weekly benefit amount but in no event shall the total charges to an employer’s account exceed the maximum permissible under Section 4141.24 of the Revised Code, as it existed prior to the effective date of this act.’
“This is an express prohibition against increasing the original determination of eligibility, and the maximum of $858 *236 remains undisturbed as prospectively chargeable to the employer’s account.
“The weeks for which Weiser seeks additional compensation are in the future. There is no claim that he is entitled to any additional payment for weeks that have passed and for which he has received his unemployment compensation.
“When Weiser, under the terms of the law before the amendment of October 10, 1959, had his eligibility status determined there was then a fixed sum of $858 chargeable against the unemployment compensation fund of his employer, Youngstown Steel Tank Company. Both employer and employee knew the maximum amount chargeable against the employer’s fund.
“The determination of the eligibility status is in no wise analogous to the determination of the status of a claimant under the Workmen’s Compensation Act. In the case of Industrial Commission v. Kamrath, 118 Ohio St., 1, 160 N. E., 470, the Supreme Court held:
“ ‘The cause of action of an injured employee accrues at the time he receives the injury in the course of his employment. ’ (Paragraph three of syllabus.)
“The unemployment act sets up a system of social legislation that has no comparison whatever with the workmen’s compensation law. It provides for relief to unemployed persons who are unemployed through no fault of their own and is financed by an excise tax on the employer. Can it be said that a cause of action accrues at the time of the original determination?
“An employee, in order to receive a weekly benefit, must file an application for each weekly benefit and qualify under the complicated terms of the act. Far from making the initial determination final, the act gives the administrator power to re-examine, even after the appeal time of the initial determination, upon many grounds. (Section 4141.45, Revised Code.)
“Clearly, the Legislature has the right to amend or repeal this act at any time it may see fit to do so. The amendment in the instant case is prospective and not retrospective in character. It tákes away .no vested rights of the employer and attaches no new obligation in respect to transactions already passed and in no wise may it be determined retrospective.”
After a careful study of this legislation, this court is of *237 the unanimous view that the conclusion of the Mahoning County-courts is sound in holding the questioned provisions constitutional.
Hence, in cause No. 37315, the judgment of the Court of Appeals for Mahoning County is affirmed, and, in cause No. 37233, that of the Court of Appeals for Lorain County is reversed.

Judgment in cause No. 37233 reversed.

Judgment in cause No. 37315 affirmed.

Matthias, Bell and Radcliee, JJ., concur.
Zimmerman, Taet and O’Neill, JJ., concur in the syllabus and in the judgment.
Radcliee, J., of the Fourth Appellate District, sitting by designation in the place and stead of Herbert, J.